UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA J. WILLIAMS, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:12CV851 JCH |
| | ) | |
| ALPHA TERRACE DEVELOPMENT | ) | |
| CORP., et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs' [sic] First Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted ("Motion to Dismiss"), filed on August 14, 2012.  (ECF No. 25).  This motion is fully briefed and ready for disposition.

**BACKGROUND**[1]

Plaintiff Linda Williams is an African-American female who had been managing the Alpha Terrace Apartments ("the Apartments").  (Amended Complaint, ECF No. 24, ¶ 1).  Defendant Alpha Terrace Development Corporation ("Alpha Terrace") is a non-profit corporation which owned and managed the Apartments and employed Plaintiff.  (Id., ¶ 2).  The Apartments are a low-income government-subsidized apartment complex located in the inner city of St. Louis.  (Id., ¶ 6). Defendant Sansone Group/DDR LLC ("Sansone") provided management services to government-subsidized housing facilities such as the Apartments.  (Id., ¶ 3).

---

[1] The facts in the Court's background section are taken directly from Plaintiff's Amended Complaint (ECF No. 24).  Defendants have not yet filed Answers to Plaintiff's Amended Complaint.

Plaintiff began her employment with the Apartments in 1981.  (Id., ¶ 6).  Plaintiff became Property Manager of the Apartments in 1992.  (Id.).  Plaintiff was serving as the Property Manager of the Apartments in 2004 when Alpha Terrace and Sansone entered into an agreement for Sansone to assume the management of the Apartments.  (Id.).  Sansone began assuming the financial and physical control of the Apartments in 2004.  (Id., ¶ 7).  In 2006, Alpha Terrace began the process of seeking federal tax credits, which required obtaining certain certifications from tenants.  (Id.).

In June 2007, Alpha Terrace and Sansone asked Plaintiff to attend a one-day seminar with personnel from Sansone regarding the paperwork involved in seeking the federal tax credits.  (Id., ¶ 8).  In May 2008, Plaintiff met with a tax credit compliance officer to discuss the forms required for compliance with the federal tax credit program.  (Id.).

In November 2008, Alpha Terrace board members and personnel from Sansone met with Plaintiff to discuss the importance of certifying the tenants in order to be in compliance with the federal tax credit program requirements.  (Id., ¶ 9).  Defendants subsequently denied Plaintiff the additional full-time assistance she requested to prepare the necessary forms to meet the compliance deadline.  (Id.).

On January 9, 2009, Plaintiff was removed by Alpha Terrace and Sansone from her position as Property Manager of the Apartments and advised that she was being transferred to St. Raymond's, another property managed by Sansone.  (Id., ¶ 10).  Plaintiff was told that her transfer would be for two months, and that the Property Manager at St. Raymond's would be transferred to the Apartments during this time.  (Id.).  Plaintiff began working at St. Raymond's on January 12, 2009.  (Id., ¶ 11).

During January and February 2009, Plaintiff discovered the previous Property Manager at St. Raymond's had engaged in improper practices, including the following:

• theft of tenant deposits;

- admitting a tenant with whom Sansone personnel had a personal relationship;

- failing to change unit locks with each change of tenancy;

- copying the master key;

- having units shown to tenants by a social worker rather than the Property Manager; and

- improper certification of tenants.

(Id., ¶ 12).  Plaintiff brought these improprieties to the attention of her supervisor, but no corrective action was taken.  (Id., ¶ 13).  Some time later Plaintiff learned that she was not scheduled to return to the Apartments.  (Id.).  Plaintiff was subsequently blamed for St. Raymond's negative state inspection and for a $10,000 fine levied by the government for matters related to the Apartments. (Id., ¶ 14).  Plaintiff was also denied make-up work time.  (Id.).

Plaintiff informed Alpha Terrace and Sansone that she questioned whether her replacement at the Apartments was properly handling the paperwork necessary for the Apartments to receive federal tax credits.  (Id., ¶ 15).  Plaintiff also informed Alpha Terrace and Sansone that she believed that the behavior of her predecessor at St. Raymond's violated federal and state policies and procedures.  (Id., ¶ 16).

In August 2009, Alpha Terrace and Sansone informed Plaintiff that they were planning to terminate her employment.  (Id., ¶ 17).  Plaintiff's last day of employment was December 4, 2009. (Id., ¶ 18).

Plaintiff filed this action in this Court on May 11, 2012, on the basis of subject-matter jurisdiction under 28 U.S.C. § 1331.  Plaintiff's original Complaint contained four counts: Count I alleged retaliation under 42 U.S.C. §§ 1981 and 1983; Count II alleged race discrimination under § 1981; Count III alleged race discrimination under Title VI of the 1964 Civil Rights Act (42 U.S.C.

§ 2000d-1); and Count IV alleged a "whistleblower cause of action" under Missouri law.  Defendants moved to dismiss Plaintiff's Complaint, and the Court dismissed Counts I, II, and IV of Plaintiff's Complaint.[2]  The Court permitted Plaintiff to file an amended complaint, and Plaintiff filed her Amended Complaint on August 10, 2012.  Plaintiff's Amended Complaint contains a single count for race discrimination under Title VI of the 1964 Civil Rights Act.  As indicated above, Defendants filed their Motion to Dismiss Plaintiff's Amended Complaint on August 14, 2012.

## STANDARD

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to Plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  A cause of action should not be dismissed for failure to state a claim unless, from the face of the Complaint, it appears beyond a reasonable doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Jackson Sawmill Co., Inc. v. United States, 580 F.2d 302, 306 (8th Cir. 1978), cert. denied, 439 U.S. 1070 (1979).

Dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity.  Stringer v. St. James R-1 Sch. Dist., 446 F.3d 799, 802 (8th Cir. 2006).  As a practical matter, such dismissal should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint there is some insuperable bar to relief.  Schmedding v. Tnemec Co., Inc., 187 F.3d 862, 864 (8th Cir. 1999); see also 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. § 1357, at 565 (3d ed. 2004) (stating that "relatively few complaints fail to meet this liberal standard and thereby become subject to dismissal" under Rule 12(b)(6)).

---

[2]Plaintiff voluntarily dismissed Count I in response to Defendants' motions to dismiss.

## DISCUSSION

Defendants argue Plaintiff's Amended Complaint fails to state a cause of action under Title VI because Defendants' receipt of tax credits was not specifically intended to provide employment as required by 42 U.S.C. § 2000d-3.

Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  Section 2000d-3 provides that "[n]othing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment."  Thus, employment discrimination claims under Title VI are limited to situations where federal assistance is designed to provide employment.  Valentine v. Smith, 654 F.2d 503, 512 (8th Cir. 1981); see also Nelson v. Special Admin. Bd. of St. Louis Pub. Sch., No. 4:11CV904, 2012 WL 1994808, at *8 (E.D. Mo. June 4, 2012) ("...[A]s interpreted by the Eighth Circuit, the statute provides that a plaintiff may allege a Title VI claim in the employment context only where the statutory grant of funds or the federally assisted program at issue is specifically intended to provide employment.").

Here, Plaintiff has failed to allege that the federal funds received by Defendants were designed to provide employment.  Even viewing the allegations in the Complaint in the light most favorable to Plaintiff, it appears that the federal tax credits obtained by Defendants were intended to encourage the development of housing options for low-income individuals.  In the absence of allegations that Defendants received federal funds for the "primary objective" of providing employment, Plaintiff has not shown she is entitled to relief under Title VI.  See Baugh v. Ozarks Area Cmty. Action Corp.,

No. 09-03177-CV-S-DGK, 2010 WL 1253718, at *5 (W.D. Mo. Mar. 31, 2010).  Thus, Defendants'

Motion to Dismiss will be granted.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiffs' [sic] First

Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted (ECF No. 25)

is **GRANTED**.  An appropriate Judgment will accompany this Memorandum and Order.


Dated this   17th  day of October, 2012.


                                        /s/Jean C. Hamilton
                                        UNITED STATES DISTRICT JUDGE